THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-271-FL

| | |
|---|---|
| CHERITA TARPLEY, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND
RECOMMENDATION**

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Cherita Tarpley ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant filed an application for DIB and SSI payments on 17 May 2005, alleging disability beginning 19 January 2005. (R. 45-50, 222-24). Both claims were denied initially and upon reconsideration. (R. 27-28, 34-36, 38-42, 219-20, 226-29). A hearing before the Administrative Law Judge ("ALJ") was held on 27 September 2007, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 233-54). On

30 November 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 7-20). On 8 April 2008, the Appeals Council denied Claimant's request for review. (R. 2-4). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard by which it is to review the administrative decision. *See e.g., Evans* v. *Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 320-21 (4th Cir. 2008*)* (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.,* is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws,* 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel,* 270 F.3d

2

171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) failure to make a severity finding regarding Claimant's documented nerve damage at the L5 level of the spine; (2) improper assessment of Claimant's credibility; (3) improper assessment of Claimant's residual functional capacity ("RFC"); (4) failure to evaluate Claimant's obesity in accordance with Social Security Ruling ("S.S.R.") 02-1p; and (5) improper reliance on the VE's testimony. *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1-2. ("Pl.'s Mem.").

3

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: (1) obesity; (2) degenerative disc disease; and (3) hypertension *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work,[1] but is unable to perform any frequent postural activities and should avoid hazards such unprotected heights and dangerous machinery. In addition, the ALJ found Claimant should be allowed to alternate sitting and standing every thirty minutes. (R. 13). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 15). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as telephone clerk, assembler/arranger and surveillance system monitor. (R. 20).

## II.  Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 36 years old and unemployed. (R. 238-39). Claimant is a high school graduate and a licensed CNA. (R. 238). Claimant's sole work experience is that of a home health aide, the duties of which included assisting elderly adults with personal care needs and working with mentally challenged children. (R. 239-40).

Claimant testified that her "biggest" medical problem preventing her from working is back pain. (R. 243). Claimant explained she needs to lie down 70 to 80 percent of each day to alleviate her pain. *Id.* Claimant's back treatment includes physical therapy, treatment by a chiropractor and by a pain specialist. (R. 243). Claimant explained neither physical therapy nor the epidural injections administered by the pain specialist has alleviated her pain, and that in fact, both treatments have aggravated her pain. (R. 243). Claimant does not wear a back brace or use a cane. (R. 243). Claimant listed other medical problems, including carpal tunnel syndrome, migraine headaches and hypertension, but testified that none of these impairments affects her ability to work. (R. 244-45).

Claimant's medications include Neurontin, Lortab, Hydrocodone and Ibuprofen for pain, Atenolol, Lisinopril and Verapamil for high blood pressure, Ambien as a sleep aid and Maxzide for constipation. (R. 241). Claimant uses a Maxair inhaler to assist her breathing. (R. 241-42). Within fifteen to twenty minutes of taking her pain medications, which she does three times a

5

day, Claimant falls asleep. (R. 241-42, 249). Claimant testified that her physician prescribed alternative pain medications, including Ultram, Naproxen and Tylenol with codeine; however, all were ineffective. (R. 242).

Claimant is able to walk for approximately ten minutes, stand two to five minutes, sit ten to fifteen minutes with alternating positions and lift ten pounds. (R. 247). Claimant does the laundry with assistance from her son and is able to cook simple dishes. *Id.* Claimant does not sweep, vacuum or mop. *Id.* Claimant's outside activities are limited to grocery shopping once a month and attending church most Sundays; however, she does not stay for the entire service. (R. 248). Claimant testified to driving three to four times a month. (R. 237).

## III.  Vocational Expert's Testimony at the Administrative Hearing

Luther D. Pearsall testified as a VE at the administrative hearing. (R. 10, 250-53). After the VE's testimony regarding Claimant's past work experience (R. 250-51), the ALJ posed the following hypothetical:

> [A]ssume a hypothetical individual [with] the same education and work background as that of the claimant. [A]ssume further that this...individual would be limited to performance of sedentary work as that term is defined in the regulations. This individual needs to avoid frequent postural activities, like stooping and crouching. Also, due to her medications, [the individual] should avoid hazards, work around dangerous moving machinery, climbing ladders or such. With such limitations, could you suggest any jobs that hypothetical individual could perform?

(R. 251). The VE responded the individual could perform the following jobs at the sedentary level: (1) telephone quotation clerk - DOT #237-367-046; SVP 2; 2,200 positions locally and 58,000 nationally; (2) table worker/inspector - DOT #739.367-010; SVP 2; 3,000 positions locally and 60,000 nationally; (3) surveillance monitor - DOT #379.367-010; SVP 2; 2,200 positions locally and 70,000 nationally. (R. 251-52). In response to whether the listed jobs

could accommodate alternating between sitting and standing every thirty minutes, the VE testified they could. (R. 252). The VE stated that he is not aware of any conflict between his testimony and the DOT. *Id.*

The ALJ then asked the VE to:

> further assume the hypothetical individual has limitations described here today by Ms. Tarpley, especially the testimony about the need to be reclining or asleep 70 percent of the time as she described, also her testimony about the ability to walk 10 minutes or stand for two to five minutes or sit for 10 to 15 minutes. She's be (sic) alternating position that frequently. Could that individual engage in work on a full-time sustained basis you can suggest?

(R. 252). The VE responded in the negative, explaining it would eliminate all positions at all exertional and skill levels. *Id.*

## DISCUSSION

## I.    The ALJ did not err in failing to classify Claimant's nerve damage as a severe impairment.

Claimant argues that the ALJ erred in the second step of the sequential evaluation process by failing to make an express determination regarding the severity or non-severity of Claimant's "documented nerve damage at the L5 level of her spine" and implies that this failure is reversible error. Pl.'s Mem. at 3-4.

As an initial matter, the Court notes that Claimant faults the ALJ for failing to discuss explicitly all evidence. While conceding that the ALJ provided "a very detailed recitation of much of the medical evidence in the file," Claimant argues "the EMG report documenting this [nerve] damage [at the L5 level of her spine], as well as the [] interpretation by [Raymond Baule, M.D., Claimant's back surgeon] are missing." Pl.'s Mem. at 4; (R. 117-19, 122-24). The regulations require the ALJ to consider all evidence in the record when making a disability

7

determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). However, the ALJ is not required to discuss all evidence in the record. *See e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ's summary of Claimant's medical record "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211. With respect to findings by Dr. Baule, the ALJ summarized specifically his progress notes pre- and post-dating Claimant's March 2005 surgery, including the November 2005 progress notes indicating that Claimant had undergone an EMG. (R. 15 ¶6, 16 ¶¶2-3, 17 ¶2). In particular, on 8 November 2005, the ALJ acknowledged Dr. Baule's finding that "a [L5-S1] disk bulge was not profound and that the claimant probably suffered ex acerbation of the bulging upon weight bearing due to obesity." (R. 17, 119). On 29 November 2005, the ALJ acknowledged Dr. Baule's statement that Claimant "claimed that she continued to suffer discomfort in her left lower extremity." *Id*.

Next, the Court finds the ALJ's step two findings are supported by substantial evidence. First, no records indicate "nerve root damage" as an impairment in and of itself. Rather, as noted

8

by the ALJ, the records document a history of low back pain, which includes Dr. Baule's notations of "chronic left L5 radiculopathy" and a "L5-S1 disk bulge with contact at the left nerve root at this level." (R. 17, 118-19). Claimant points out correctly that the ALJ did not mention explicitly the above notations by Dr. Baule. However, as conceded by Claimant, the ALJ provided "a very detailed recitation of much of the medical evidence in the file," Pl.'s Mem. at 4, including, as discussed previously, the progress notes from Dr. Baule wherein a possible injury to Claimant's nerve root was noted. (R. 13-18). The Court notes further the ALJ's step three finding that Claimant's "degenerative disc disease has not resulted in the compromise of a nerve root...." (R. 13). In addition to the ALJ's summary of Dr. Baule's progress notes, this finding indicates also the ALJ's consideration of evidence documenting any potential nerve root injury. For these reasons, Claimant's argument is not persuasive.

## II. The ALJ properly evaluated the credibility of Claimant's statements.

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 19-22.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-

9

7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Newton v. Astrue*, 559 F. Supp. 2d 662, 673 (E.D.N.C. 2008). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1)     effect of symptoms on claimant's daily activities
(2)     location, duration, frequency and intensity of the symptom(s)
(3)     factors that precipitate or aggravate claimant's symptoms
(4)     type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5)     non-medical treatment received for relief of the symptom(s)
(6)     any non-treatment measures used to relieve the symptom(s)
(7)     other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ provided a

10

detailed summary of medical records pertaining to Claimant's back impairment, including records from the following: (1) Dr. Baule pre-dating and post-dating Claimant's March 2005 surgery (R. 15, 113, 116, 118-19, 188-91, 204-06); (2) John Diamond, M.D. and Aurora K. Pajeau, M.D., with the Boice-Willis Clinic, dated 30 November 2004 through 15 February 2006; and (3) Rocky Mount Family Medical Center ("RMFMC") dated 27 March 2006 through 7 August 2007. (R. 15-17). These records indicate that Claimant was not in acute distress (R. 16 ¶5, 131, 147, 163, 171, 173), moved all of her extremities well and had no evidence of acute synovitis of joints of the upper or lower extremities (R. 17 ¶1, 119, 125), her motor examinations demonstrated normal bulk, tone and power (R. 17 ¶2, 113, 119, 185, 188, 190) and her coordination was normal ( 17 ¶2, 113). Despite Claimant's allegations of constant back pain, the ALJ noted that Claimant's medical records provide instances of medication noncompliance. (R. 16-18, 125, 144, 169, 242). Claimant offered no reason for excusing her non-compliance and in fact, testified to experiencing relief of back pain when taking her medication. (R. 15, 17, 242); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling."). The ALJ acknowledged also records revealing Claimant's history of hypertension and bronchitis (R. 15-17, 125, 128-29, 134-35, 144, 163-68), in addition to a diagnosis of right carpal tunnel syndrome. (R. 17, 116).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the

11

context of all the evidence."). In particular, the ALJ's decision cites the following testimonial evidence in evaluating Claimant's credibility: (1) daily activities, such as doing the laundry with assistance and cooking "quick and fast dishes," attending church on a weekly basis but an inability to stay for the entire service and driving to the grocery store and medical appointments; (2) existence of constant back pain and Claimant's testimony that said pain is the only impairment affecting her ability to work; (3) Claimant's statement to Dr. Baule that her pain is exacerbated by sitting up straight (R. 190-91) and her statement to Dr. Diamond that her pain decreases with standing and increases with sitting and walking (R. 213); (4) use of numerous prescription pain medications and her anti-hypertensive treatment regimen; (5) treatment by a chiropractor in addition to physical therapy (R. 190-91, 216-17); (6) the need to lie down 70% to 80% of each day in order to relieve pain and (7) Claimant's walking, standing, sitting and lifting limitations. (R. 14-18).

However, Claimant criticizes the ALJ's observation that Claimant has received little treatment subsequent to her March 2005 back surgery and his statement that Claimant remains able to take care of her home Pl.'s Mem. at 12. With respect to treatment for back pain, Claimant counters that Dr. Baule indicated no treatment options exist except treating the pain. *Id.*; *see* (R. 16) (noting statement in 7 March 2007 progress note that "Dr. Baule...had indicated that there was nothing that could be done for the claimant's back pain other than just treat the pain"). Claimant counters further that between 29 December 2005 and 27 September 2007, she visited Dr. Baule four times and her treating physicians at RMFMC six times. The ALJ acknowledged pain management as Claimant's only opt ion, in addition to summarizing the medical records cited by Claimant. (R. 16-17). However, Claimant's failure to take her

12

medications as prescribed indicates her back pain is not as limiting as described. (R. 17). Moreover, the majority of the records cited by Claimant were follow-up visits for hypertension (128-29, 153, 163-64), urinary tract infection (R. 130-31, 173-76) and chronic bronchitis (R. 137, 140, 142)[2] - impairments either not alleged or explicitly denied by Claimant as impacting her ability to work. (R. 15). Accordingly, the ALJ observed properly that Claimant "received little treatment since the [back] surgery." (R. 18).

Regarding Claimant's ability to take care of her home, Claimant states "[t]here is no evidence...that [she] takes care of her home" and "[i]t is not necessary for a claimant to be bedridden and non-functional to be disabled." Pl.'s Mem. at 12. In summarizing Claimant's testimony, the ALJ acknowledged Claimant's testimony that "she did not do any chores, but later stated that she did the laundry with the help of her son and that she was able to cook quick and fast dishes." (R. 15). However, the ALJ noted also that Claimant's treating physician encouraged a regular exercise regimen. (R. 16, 129, 148, 158, 164, 189). In fact, progress notes dated 7 March 2007 and 7 August 2007 indicate Claimant was exercising "occasionally." (R. 16, 128, 144). The ALJ explained further that Claimant "is noted as being in no acute distress" and that "no physician has reported any disabling limitations." (R. 18). Accordingly, substantial evidence supports the ALJ's finding that Claimant's statements of debilitation were not entirely credible.

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only sedentary

---

[2] Duplicate copies of records (R. 128-31), (R. 142) and (R. 163-64) appear at (R. 132-35), (R. 145) and (R. 167-68), respectively.

13

activities, despite two state agency physical RFC assessments indicating Claimant was capable of medium exertion, reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. (R. 15-16, 18, 177-84, 195-202). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## III.    The ALJ properly assessed Claimant's RFC.

Claimant contends that the ALJ erred in evaluating her RFC, in part, by not performing a function-by-function analysis of her abilities and by not providing support for his sit and stand determination.

Social Security Ruling 96-8p states the "RFC assessment must...assess [the individual's] work-related abilities on a function-by-function basis." S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545 (b)-(d), 416.945 (b)-(d). The functions considered, where applicable, include physical,[3] mental[4] and any other[5] abilities affected by an individual's

---

[3] Physical abilities include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)...." 20 C.F.R. §§ 404.1545(b), 416.945(b).

[4] Mental abilities include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting...."

14

impairment. *See* 20 C.F.R. §§ 404.1545 (b)-(d), 416.945 (b)-(d). In this case, with respect to physical abilities impacted, the ALJ noted exertional limitations and in particular, an inability to lift more than 10 pounds and a need to alternate between sitting and standing. (R. 13). Claimant avers no medical opinion in the file supports the ALJ's sit and stand finding. Pl.'s Mem. at 5. Indeed, as the ALJ found, "no physician has reported any disabling limitations." (R. 18). Yet, while finding Claimant's testimony "not entirely credible," the ALJ found Claimant needed to alternate between sitting and standing every thirty minutes. *Id.* As discussed previously, the ALJ's credibility finding is supported by substantial evidence, including numerous notations by Claimant's physicians encouraging exercise. (R. 16-18). Ultimately, Claimant carries the burden of establishing a prima facie entitlement to benefits and bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at \*4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence...showing how the impairment(s) affects...functioning....").

The ALJ noted further postural limitations, and in particular, an "inability to perform any frequent postural activities."[6] (R. 13). Claimant did not allege any physical limitations with

---

20 C.F.R. §§ 404.1545(c), 416.945(c).

[5] In defining "other abilities," the regulations provide "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. §§ 404.1545(d), 416.945(d).

[6] Claimant opines that the ALJ "included the vague term 'postural activities' without explaining what that means." Pl.'s Mem. at 6. Claimant's contention is baseless, as examples of such activities are provided in the Physical Residual Functional Capacity Assessment completed by state agency medical consultants. *See also* S.S.R. 96-9p, 1996 WL 374185, at \*7 (July 2, 1996) (explaining "[p]ostural limitations or restrictions [are] related so such activities as "climbing ladders, ropes or

15

respect to manipulative abilities and the evidence does not support any such limitations. Moreover, no mental limitations were alleged by Claimant nor discussed in Claimant's mental records. Finally, the ALJ found that as a result of Claimant's back impairment, it was necessary to impose environmental restrictions. In particular, the ALJ noted that Claimant "should avoid hazards such as unprotected heights and dangerous machinery." (R. 13).

The ALJ's discussion spans three single-spaced pages, is replete with citations to the record and carefully analyzes Claimant's work-related abilities. Moreover, while two state agency consultants found Claimant had the RFC to perform medium work, the ALJ found Claimant capable of sedentary work only. (R. 18, 177-84, 195-202). Accordingly, the Court finds that substantial evidence supports the RFC assessment made by the ALJ and that the correct legal standards were applied.

## IV. The ALJ did not fail to consider the effects of Claimant's obesity in determining Claimant's RFC.

Claimant contends the ALJ failed to consider Claimant's obesity in accordance with the Social Security regulations. Specifically, Claimant alleges that the ALJ did not explain his findings as to the effects of obesity when determining Claimant's RFC. Pl.'s Mem. at 12; *see* 20 C.F.R. § 404, Subpt. P, App. 1, 1.00(Q) ("when assessing an individual's [RFC], adjudicators must consider any additional and cumulative effects of obesity"). This Court disagrees.

Pursuant to S.S.R. 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a

---

scaffolds, balancing, kneeling, crouching, or crawling"); 20 C.F.R. §§ 404.1545(b), 416.945(b) (providing examples of postural functions, such as stooping or crouching).

listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. S.S.R. 02-01p, 2000 WL 628049, at *3. When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* at *6.

In this case, the ALJ's treatment of Claimant's obesity comported fully with that regulatory ruling as to all steps of the sequential evaluation process. In particular, the ALJ found Claimant's obesity, degenerative disc disease and hypertension to be severe impairments but not severe enough to meet or medically equal an impairment listed in 20 C.F.R., Subpart P, Appendix 1, Regulations No. 4. (R. 19). Contrary to Claimant's argument, the ALJ proceeded to analyze the effects of these impairments, including obesity, upon Claimant's RFC. For example, the ALJ expressly referenced (1) Dr. Diamond's 21 January 2005 progress note indicating Claimant's weighed 297 pounds and (2) Dr. Baule's 8 November 2005 progress note, wherein it was noted that Claimant probably suffered an exacerbation of her bulging disk upon weight bearing due to obesity and recommended that Claimant lose weight. (R. 17, 119, 217). Upon reviewing the evidence, the ALJ concluded that Claimant's "obesity does not prevent [her] from moving her limbs, lifting or carrying 10-20 pounds or from sitting, standing and walking six hours of an 8-hour work day." (R. 13).

In addition to medical evidence, the ALJ discussed non-medical evidence bearing upon Claimant's RFC. As the ALJ noted in his opinion, Claimant "assertively stated" that back pain was her major problem. (R. 15, 243-45). The ALJ has a duty to evaluate the intensity and

17

persistence of a claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). However, that duty does not extend to speculating as to the impact of those symptoms. Rather, the claimant has the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on her ability to work on a sustained basis. *See* 20 C.F.R. §§404.1512(c), 416.912(c) and 20 C.F.R.§§ 404.1545(a)(3), 416.945(a)(3); *see also Pass*, 65 F.3d at 1203. Yet, Claimant has failed to do more than suggest that the ALJ should have speculated as to what extent obesity may have impaired her ability to work. The regulations, however, prohibit the ALJ from engaging in such guesswork:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record.*

S.S.R. 02-01p, 2000 WL 628049, at *6 (emphasis added).

As S.S.R. 02-1p makes clear, it is not the mere presence of an impairment such as obesity which determines disability, but rather the effect the impairment has on the ability of the claimant to function and perform work-related tasks. In this case, there is little evidence in the record to show that Claimant's obesity affected her ability to perform such tasks. In sum, in evaluating all the evidence, the ALJ appropriately considered Claimant's obesity to the extent it was an issue in her medical examinations, pursuant to S.S.R. 02-1p. Claimant's argument as to this issue is therefore without merit.

## V. The ALJ properly relied on the testimony of the vocational expert.

Claimant contends the VE failed to provide a revised figure as to the representative positions available that Claimant could perform in light of the requirement of a sit and stand

18

option and thus, the ALJ's reliance on the VE's testimony was error. Pl.'s Mem. at 7. Claimant alleges further that the VE's testimony regarding one of the positions identified as accommodating Claimant's RFC conflicted with the DOT and the ALJ erred in relying on said testimony. *See* Pl.'s Mem. at 9.

Pursuant to S.S.R. 00-4p, the ALJ must "inquire, on the record, as to whether or not" the "[o]ccupational evidence provided by a VE" is "consistent with the occupational information supplied by the DOT." S.S.R. 00-4p, 2000 WL 1898704, at *2; *see Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (explaining the ALJ's duty to develop the record includes "[q]uestioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations."). "When a VE testifies about the requirements of a job or occupation, the ALJ has 'an affirmative responsibility' to ask about any possible conflict between the expert's testimony and the DOT, and if the VE's testimony 'appears to conflict with the DOT,' to 'obtain a reasonable explanation for the apparent conflict.'" *Brock v. Astrue*, 2007 WL 4287721, at *5 (E.D.N.C. Dec. 5, 2007) (quoting S.S.R. 00-4p, 2000 WL 1898704, at *4 and citing *Justin v. Massanari*, 20 Fed. Appx. 158, 160 (4th Cir. 2001)); *see also Oxendine v. Halter*, 181 F. Supp. 2d 570, 574 (E.D.N.C. 2001) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his...testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.") (quoting *Haddock*, 196 F.3d at 1087).

In this case, the ALJ inquired, on the record, as to whether the occupational evidence provided by the VE was consistent with the occupational information supplied by the DOT. (R.

19

20, 252). The ALJ inquired further as to the VE's knowledge whether an individual limited by a sit and stand option could perform the DOT job titles cited by the VE. (R. 252). Accordingly, the record demonstrates that the ALJ satisfied his obligation under S.S.R. 00-4p. *See Brock*, 2007 WL 4287721, at *6 (ALJ found to have satisfied his obligation under S.S.R. 00-4p where the ALJ inquired as to whether the VE's descriptions were consistent with the DOT, except for the sit and stand option and the VE testified that the job descriptions were consistent).

Regarding Claimant's second contention, the Court acknowledges, and Defendant concedes, that the occupational title of Table Worker/Inspector is not described in the DOT as identified by the VE. Def.'s Mem. at 14 n.7. In fact, the VE listed a non-existent DOT code for that title (739.367-010). Moreover, the ALJ identified incorrectly the position of Assembler-Arranger (DOT code 739.367-010)[7] as one of the three positions testified to by the VE.[8] (R. 20). As this job title is classified as light in exertion, it is not compatible for a person with Claimant's functional limitations. *See* (R. 13). Accordingly, the ALJ's reliance on said position was error.

Nonetheless, such error is harmless considering the ALJ relied appropriately upon the VE's testimony regarding the positions of Telephone Clerk and Surveillance System Monitor,

---

[7] The job duties required of an Assembler-Arranger are:

> Assembles decorative wall plaques by hand: Arranges flowers or other ornamental material, according to prepared design, and glues parts on pasteboard, plastic, or wooden background. Places sheet of glass over design and applies gummed tape around edges to hold glass in place. May assemble decorative arrangement, using twisting machine to fasten arrangement together.
> GOE: 06.04.23 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 77

http://www.occupationalinfo.org/73/739687010.html

[8] The ALJ's decision does not mention the Table Worker/Inspector position identified by the VE. (R. 20).

20

and that Claimant could perform said positions. *See Mickles*, 29 F.3d at 921 (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). As the VE identified two jobs existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis). Therefore, the testimony of the VE regarding the Telephone Clerk and Surveillance System Monitor positions constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist in the regional economy which Claimant could perform. *See Prunty v. Barnhart*, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden); *see also* S.S.R. 00-4p, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). Accordingly, the Court finds the ALJ's determination that there are significant numbers of jobs available for a person with Claimant's limitations is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 16th day of January, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge

Case 5:08-cv-00271-FL   Document 19   Filed 01/16/09   Page 22 of 22